**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**COUNSEL FINANCIAL SERVICES, LLC,**

                              **Plaintiff,**

              **-v-**                                    **08-CV-0156A(Sr)**

**MELKERSEN LAW, P.C.**
**MICHAEL J. MELKERSEN, ESQ.**

                              **Defendants.**
_____

### REPORT RECOMMENDATION AND ORDER

              This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #7.

              Currently before the Court is plaintiff's motion for summary judgment.  Dkt.

#9.  For the following reasons, it is recommended that plaintiff's motion be granted.

### BACKGROUND

              Plaintiff, Counsel Financial Services, LLC, is a commercial lending

institution based in Amherst, New York, which specializes in loans to law firms.  Dkt. #1,

p.11, ¶ 1.

On October 13, 2005, defendant Melkersen Law, P.C., a Virginia Professional Corporation, executed a Revolving Promissory Note ("Note"), and defendant Michael J. Melkersen, the principal shareholder and President of Melkerson Law, P.C., executed a personal guaranty of that Note.  Dkt. #1, p.11, ¶ ¶ 3 & 4 & pp.15-27.

On July 24, 2007, Mr. Melkersen applied for an increase in the line of credit from $250,000 to $500,000.  Dkt. #5, ¶ 8.  On July 27, 2007, a case analyst reviewed Mr. Melkersen's case portfolio and advised him that he would give a positive recommendation with respect to the increase in the line of credit.  Dkt. #5, ¶ 8. Thereafter, Megan Brooks Payne, Senior Vice President of Counsel Financial Services, LLC, advised that additional financial documentation was needed.  Dkt. #5, ¶ 9.  Upon receipt of this information, Ms. Payne advised that they were sending their auditor to review defendants' financial statements and other records.  Dkt. #5, ¶ 9.  The auditor, James Cox, advised Mr. Melkersen that defendants were one of plaintiff's "success stories" and that they looked forward to a "long and mutually beneficial relationship" between the parties.  Dkt. #5, ¶¶ 9-10.

On August 31, 2007, Ms. Payne advised Mr. Melkersen that she would not approve the increase in the line of credit and suggested the possibility of additional guarantors.  Dkt. #5, ¶ 11.  Mr. Melkersen advised Ms. Payne that his wife would be willing to serve as a guarantor and provided her financial information to plaintiff.  Dkt. #5, ¶ 11.  Ms. Payne then requested a budget detailing how the funds would be used.

Dkt. #5, ¶ 11.  According to Mr. Melkersen, on September 7, 2007, Ms. Payne advised him that

> Plaintiff required additional collateral from me through the form of a personal guaranty by an individual of "substance". I was led to believe then that all I needed to do was find an individual of "substance" to act as a guarantor and then the increase would be approved.  I did, in fact, find such a person in a friend and client by the name John Barsa, M.D. Dr. Barsa is a man of significant assets and significant income and he agreed to serve as guarantor.  I even sent Dr. Barsa's personal financial statement to Plaintiff.  Ms. Payne responded that they would like me to provide additional documentation that Mr. Cox had requested (in addition to what was provided to him on his trip to Virginia) but I was again led to believe that this was a mere formality given the fact that I had obtained an individual of "substance to guarantee the loan as Plaintiff requested.

Dkt. #5, ¶ 12.

The parties do not dispute that the last monthly interest payment on the Note was received from defendants in September of 2007.  Dkt. #10-3, ¶ 3.  When defendants failed to make the October payment, plaintiff set off the amount due for October from defendants' interest reserve account.  Dkt. #9-8, ¶ 6; *see* Dkt. #1, p.18.

Mr. Melkersen avers that he "continued to jump through hoops providing Plaintiff with the additional documentation that they had requested" from September 24 through October 23, 2007.  Dkt. #5, ¶ 13.  However, on October 26, 2007, Mr. Melkersen affirms that he received a telephone call from Mark S. Hoffman, Esq., informing him that Counsel Financial Services, LLC, would not increase the line of credit to $500,000.00 and was calling the balance due on the existing Note.  Dkt. #5,

¶ 13; Dkt. #9-7, p.1.  As Mr. Melkersen wrote in an e-mail to Ms. Payne, Mr. Hoffman

explained that "Counsel decided not to extend my line or renew it because it believed I

was using its money to play poker in violation of my contract."  Dkt. #9-7; *see* Dkt. #9-5

& 9-6.[1]  Mr. Melkersen explained that he had

> been successful in that endeavor for many years, and
> therefore, my activity in that regard was always done with an
> expectation of a profit and improving my personal financial
> situation.  As I told Mr. Hoffman, I was not aware that I could
> not take personal draws from the Counsel line in a
> reasonable amount, nor was I aware that there were any
> restrictions on how I used my partnership draws or otherwise
> spent my personal funds.

Dkt. #9-7.

On January 15, 2008, plaintiff commenced this action against defendants

in the Supreme Court of the State of New York, Erie County, by filing a Summons and

Notice of Motion for Summary Judgment in Lieu of Complaint, with supporting affidavits,

pursuant to section 3213 of the New York Civil Practice Law and Rules.  Dkt. #1, pp.7-

13.  Defendants removed that action to this Court, asserting diversity jurisdiction.

Dkt. #1.

## DISCUSSION AND ANALYSIS

Plaintiff moves for summary judgment, seeking a total of $275,464,47 as

of April 30, 2008 ($249,120.03 principal; $22,420.80 outstanding interest; and

---

[1] Paragraph 10 of the Note provides that the "Borrower shall not obtain or use the proceeds of any Loan for any purpose other than for working capital of the Borrower.  The Borrower acknowledges, warrants and represents to, and agrees with, the Lender that no Loan proceeds shall be used by the Borrower for other than a business or commercial purpose of the Borrower." Dkt. #1, p.20.

$3,923.64 late payments), as a result of defendants' default.  Dkt. #10-4.  Plaintiff also

seeks payment of fees, costs, disbursements and reasonable attorneys fees associated

with this legal action.  Dkt. #1, p.13, ¶ 9.


Defendants argue that summary judgment is inappropriate because

plaintiff breached the agreement by improperly calling the Note prior to defendants'

default on interest payments.  Dkt. #6.  Defendants also argue that they relied upon

plaintiff's promise to extend the line of credit and were damaged by plaintiff's failure to

do so.  Dkt. #6.  Defendants assert that they should have an opportunity to assert these

counterclaims and conduct discovery.  Dkt. #6.


N.Y.C.P.L.R. § 3213

Section 3213 of New York's Civil Practice Law and Rules provides as

follows:

> When an action is based upon an instrument for the
> payment of money only or upon any judgment, the plaintiff
> may serve with the summons a notice of motion for
> summary judgment and the supporting papers in lieu of a
> complaint.

Section 3213 "does not permit a defendant to bring counterclaims that would not

independently qualify for summary judgment."  *Solow v. Stone*, 163 F.3d 149, 151 (2d

Cir. 1998).  However, section 3213 is "a procedural rule, and when this case was

removed to federal court, the regime of the Federal Rules replaced that of § 3213."  *Id.*

As a result, Rule 13 of the Federal Rules of Civil Procedure "governs counterclaims in

the federal courts, and Fed.R.Civ.P. 13(b) states that a defendant in a civil action may

raise 'any claim against an opposing party'" as a counterclaim." *Id.*

Proposed Breach of Contract Counterclaim

       "Under New York law, the elements of a cause of action for breach of

contract include: (1) formation of a contract between the plaintiff and defendant; (2)

performance by the plaintiff; (3) failure by the defendant to perform; and (4) resulting

damages." *Clarke v. Max Advisors*, LLC, 235 F. Supp.2d 130, 141 (N.D.N.Y. 2002).

Assuming, for purposes of this motion, that plaintiff breached the agreement by

improperly calling the balance due on the existing Note on October 26, 2007,

defendants have failed to allege any damages resulting from this breach.


       "In the absence of any allegations of fact showing damage, mere

allegations of breach of contract are not sufficient to sustain a complaint." *Lexington

360 Assocs. v. First Union Nat'l Bank of N.C.*, 234 A.D.2d 187, 189-90 (1st Dep't 1996).

Although defendants argued at oral argument that it is self-evident that the declaration

of default would cause damage to defendants' credit and reputation, defendants have

proffered no allegations of actual damages resulting from Mr. Hoffman's conversation

with plaintiff.  "Where a party has failed to come forward with evidence sufficient to

demonstrate damages flowing from the breach alleged and relies, instead, on wholly

speculative theories of damages, dismissal of the breach of contract claim is in order."

*Id.* at 190.

Proposed Promissory Estoppel Counterclaim

Defendants cannot allege a viable claim of promissory estoppel because they cannot assert a clear and unambiguous promise to increase the line of credit to $500,000.  "In order to state a claim for promissory estoppel under New York law, a plaintiff must demonstrate three elements: (1) a clear and unambiguous promise;  (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) injury sustained by the party asserting the estoppel by reason of his reliance."  *Cohen v. Lehman Brothers Bank, FSB*, 273 F. Supp.2d 524, 529 (S.D.N.Y. 2003).

In the instant case, Mr. Melkersen fails to aver a clear and unambiguous promise that the additional $250,000.00 would be forthcoming.  To the contrary, Mr. Melkersen's affidavit reveals that plaintiff sought additional information and documentation and guarantees throughout the review process.  Moreover, the comments by plaintiff's representatives are no more optimistic than, "I like what I see," and that plaintiff was looking forward to a "long and mutually beneficial relationship." Dkt. #5.  Statements conveying a desire to consummate or further a commercial transaction do not constitute a clear and ambiguous promise.  *See Henneberry v. Sumitomo Corp, of America*, 415 F. Supp.2d 423, 444 (S.D.N.Y. 2006); *Marine Transport Lines, Inc. V. Int'l Org. Of Masters, Mates & Pilots*, 636 F. Supp. 384, 391 (S.D.N.Y. 1986).  Thus, any attempt to assert a counterclaim of promissory estoppel would fail as a matter of law.

<u>Defendants' Default on the Note</u>

Paragraph 4(b) of the Note requires defendants to "pay monthly interest . . . that has accrued on the Outstanding Principal Amount through the last day of any calendar month, beginning with the calendar month containing the date of this Note, all such payment of principal or interest by the 10th day of the succeeding calendar month." Dkt. #1, p.18.  Paragraph 1(d)(i) provides that a default occurs if a "Borrower defaults in the payment when due of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note and such default continues uncured for five days."  Dkt. #1, p.15.  As set forth in paragraph 11 of the Note:

> Upon or at any time or from time to time after the occurrence or existence of any Event of Default . . . set forth in Section 1(d) of this Note, the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of the Holder and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by the Borrower), become immediately due.

Dkt. #1, p.20.  As it is undisputed that the last monthly interest payment on the Note was received from defendants in September of 2007, with the October payment coming from defendants' interest reserve account, plaintiff has established defendants' default on the Note and is entitled to summary judgment.

The Court has reviewed plaintiff's calculation of the amount due and owing on the Note (Dkt. #9-4), and is satisfied that plaintiff's request for judgment in the amount of $275,464,47 as of April 30, 2008, plus payment of fees, costs, disbursements and reasonable attorneys fees associated with this action is appropriate.

## CONCLUSION

For the foregoing reasons,  it is recommended that plaintiff's motion for summary judgment in lieu of a complaint be **GRANTED** and that judgment be entered against defendants in the amount of $275,464,47 as of April 30, 2008, plus payment of fees, costs, disbursements and reasonable attorneys fees associated with this action.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Latch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v.*

*a]n*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
           January 27, 2009

   **S/ H. Kenneth Schroeder, Jr.**
   **H. KENNETH SCHROEDER, JR.**
   **United States Magistrate Judge**